UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OLIVER JOSE PARRA RACHID,

        Petitioner,

     v.

Case No. 2:26-cv-1237-KCD-DNF

WARDEN OF THE GLADES
COUNTY DETENTION CENTER,
DIRECTOR GARRETT J. RIPA,
IMMIGRATION AND CUSTOMS
ENFORCEMENT AND REMOVAL
OPERATIONS - MIAMI FIELD
OFFICE; ACTING DIRECTOR-ICE
TODD LYONS, IMMIGRATION
AND CUSTOMS ENFORCEMENT;
SECRETARY MARKWAYNE
MULLIN, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF
THE DEPARTMENT OF
HOMELAND SECURITY; AND
ATTORNEY GENERAL TODD
BLANCHE, OFFICIAL CAPACITY;

        Respondents,

                              /

## **ORDER**

Petitioner Oliver Jose Parra Rachid has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

("INA") and the Fifth Amendment. (*Id.* at 13-17.) Respondents oppose the petition. (Doc. 9.)

## I. Background

Rachid is a citizen of Venezuela. In 2023, he entered the United States through the Orlando airport. He was stopped, and after a brief interview, an immigration officer paroled him into the country. (Doc. 8-2.) His parole came with an expiration date—May, 18, 2025—which passed without Rachid obtaining lawful status. Then, on February 9, 2026, ICE agents arrested him following a traffic stop. He has been in custody ever since because the Government claims he is subject to mandatory, no-bond detention under 8 U.S.C. § 1225(b)(2)(A). (Doc. 9 at 2.) Unwilling to wait behind bars indefinitely, Rachid filed this petition for a writ of habeas corpus. (Doc. 1.)

## II. Legal Standard

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration

2

detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

American immigration law has long rested on a basic geographic distinction. For more than a century, the rules have changed depending on which side of the border a person stands. When a noncitizen arrives at our doorstep—stopped at the boundary line, having gained no foothold—the Constitution's protections are at their lowest ebb. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138 (2020). But cross into the interior, and the legal landscape shifts. "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). This simple inside-outside dichotomy is the fault line running through all of immigration law.

Congress wrote this geographic divide directly into the immigration code. When the Government wants to detain a noncitizen waiting for a final removal order, it must look to one of two statutes: 8 U.S.C. § 1225 and § 1226. Which one applies depends on where the noncitizen is standing. As concisely summarized by the Supreme Court: "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain

certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

Under § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as an "applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission can be detained pending removal under two separate provisions: § 1225(b)(1) and § 1225(b)(2).

Section 1225(b)(1) targets a specific slice of noncitizens: those who are quite literally arriving at our doorstep, or who crossed the border unlawfully less than two years ago, and who either lack proper papers or used fraud to try to get in. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii); §§ 1182(a)(6)(C), (a)(7). For this group, Congress designed a fast-track system. The statute mandates expedited removal, entirely bypassing the usual hearings and layers of review. But there is an important caveat. If an individual expresses a fear of persecution or an intent to seek asylum, the fast-track removal hits pause. In exchange, the statute imposes a strict condition: the Government must detain the individual—mandatorily and without bond—while an officer vets their asylum claim. And, if the claim fails, until they are removed. *See* § 1225(b)(1)(B); *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 618-20 (D.C. Cir. 2020) (summarizing expedited removal provisions).

4

Section 1225(b)(2) is a "catchall provision" that applies to most other applicants for admission. *Jennings*, 583 U.S. at 281. For this group, Congress swapped the fast track for the standard route, placing them in ordinary removal proceedings before an immigration judge. *See* §§ 1225(b)(2)(A), 1229a. But here is the rub: even though these individuals get a full hearing, they generally do not get to wait for it at home. With only limited exceptions, § 1225(b)(2) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. So, boiled down, aliens falling under § 1225 are categorically not entitled to a bond hearing.

Meanwhile, § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. For this group—individuals who have crossed the boundary line and are physically present inside the United States—Congress split the detention rules into two separate tracks: §§ 1226(a) and 1226(c).

Section 1226(a) sets the baseline rule for this interior group, and its defining feature is discretion. "On a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). So, unlike the rigid lock-up commands of § 1225, § 1226(a) leaves the jailhouse door unlocked, explicitly allowing for release on bond. The regulations spell out exactly how a noncitizen can secure that release: by

5

showing they are neither a danger to the community nor a flight risk. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). While immigration officers get the first crack at setting those custody conditions, if the initial answer is no, the noncitizen can request an individualized bond hearing before an immigration judge. *See Jennings*, 583 U.S. at 306.

Finally, § 1226(c) "carves out a statutory category of aliens who may not be released." *Jennings*, 583 U.S. at 289. If an alien has committed certain crimes, the opportunity for a bond hearing vanishes, and detention becomes mandatory. *See* 8 U.S.C. § 1226(c). Such criminal aliens may be released only under very narrow circumstances involving a determination by the Attorney General. *Id.* § 1226(c)(4).

Turning back to the facts here, Rachid has been detained by immigration officials for several months without a chance at release. He protests that he is entitled to a bond hearing under § 1226(a) or the Fifth Amendment. (Doc. 1 at 13-14.) The Government, however, insists that § 1225(b)(2) firmly applies to Rachid, which makes his detention mandatory. (Doc. 9.)

This Court has previously held that aliens stopped at the border and released into the country, like Rachid, fall under § 1225(b)(2). *See, e.g., Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025). But the Eleventh Circuit's latest decision in this area now

6

dictates a different result. *See Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026).

"The text of § 1225(b)(2)(A) is clear that mandatory detention applies only to a narrower category of applicants for admission: those seeking lawful entry into the United States." *Id.* at *13. To trigger § 1225(b)(2), an alien must be (1) "arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer." *Id.* at *8.

Rachid does not meet the second element. He is not "seeking lawful entry." *Hernandez Alvarez*, 2026 WL 1243395, at *8. "[T]he act of seeking admission constitutes the pursuit of lawful entry . . . after inspection and authorization by an immigration officer." *Id.* at *7. That question was asked *and answered* at the border years ago. An immigration officer already evaluated Rachid's arrival and resolved his admission. The upshot is simple—Rachid is "not seeking or pursuing any object [at this time], let alone lawful entry." *Id.* at *8. Instead, he is merely present in the country, meaning he falls outside the grip of § 1225(b)(2).

Section "1225 applies to arriving aliens seeking entry at the border, whereas § 1226 applies to aliens unlawfully in the interior." *Hernandez*

*Alvarez*, 2026 WL 1243395, at \*14. Rachid falls into the latter category, so the "[f]ederal regulations provide that [he] receive a bond hearing." *Jennings*, 583 U.S. at 306.

Rachid requests his immediate release from custody. But that is not something the Court will do. "[Section] 1226(a)(1) grants the executive branch discretion to determine whether to detain or release a noncitizen who is facing removal proceedings." *Hulke v. Schmidt*, 572 F. Supp. 3d 593, 596 (E.D. Wis. 2021). Rachid is an alien without lawful status. So he is entitled to a bond hearing under § 1226(a), not immediate release. *See, e.g.*, *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668 (W.D. Tex. 2025). Consistent with the "comfortable majority position," the Court will instead require the Government to provide Rachid with the statutory process required under § 1226(a), which includes a bond hearing. *Id.*

To the extent Rachid also seeks relief under the Fifth Amendment, or any other theory, such claims are not addressed "given that the Court [is granting] the relief [he is entitled to] based on its interpretation of the applicability of § 1226(a)." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at \*8 (E.D. Mich. Sept. 9, 2025). If the Government does not provide Rachid with a bond hearing as ordered or he remains in custody, he can renew any other claims in a subsequent suit.

8

## IV. Conclusion

Accordingly, the Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED IN PART AND DENIED IN PART**. The Court orders the Government to provide Petitioner with the statutory process required under § 1226, which includes a bond hearing. All other relief is **DENIED**. The Clerk is directed to terminate any pending motions and deadlines and close the case.

**ORDERED** in Fort Myers, Florida on May 21, 2026.


Kyle C. Dudek
United States District Judge

9